UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY MEEKS,

        Plaintiff,

v.                                  Case No. 19-10868

CAMPBELL, *et al.*,

        Defendants.
_____/

**AMENDED OPINION AND ORDER OF PARTIAL DISMISSAL**[1]

    This is a *pro se* prisoner civil rights case. (ECF No. 1.) Plaintiff Anthony Meeks is incarcerated at the Michigan Reformatory in Ionia, Michigan. He names twenty-one Defendants, all employees of the Michigan Department of Corrections (MDOC). Plaintiff names all Defendants in their personal and official capacities. Plaintiff, who is proceeding *in forma pauperis*, alleges that Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments.

    Plaintiff fails to state a claim upon which relief may be granted against Defendants Campbell (Warden), Health Unit Manager (HUM) Campbell, Fleenor, Scate, Tanner, Lesie, Clark, Roback, Rodugues, Johnson, Lundy, Gallatin, Zimmenment, and Karte. The court will also dismiss Plaintiff's claims against all Defendants in their official capacities based upon Eleventh Amendment immunity. The court will dismiss Plaintiff's Fifth Amendment claim and portions of his First, Eighth, and Fourteenth Amendment

---

[1] This amended opinion and order corrects the inadvertent omission of defendant Starr from the list of defendants against whom Plaintiff's remaining claims may proceed.

1

claims. Plaintiff's remaining claims may proceed against Defendants Solmonson, Riccimstrict, Mohr, Starr, Lewis, and D. Martin.

## I. BACKGROUND

Plaintiff's claims arise from his incarceration at the Gus Harrison Correctional Facility (Gus Harrison) in Adrian, Michigan. Plaintiff states that, on some unspecified date, he was transferred to Gus Harrison so that he could participate in a mental health treatment program. (ECF No. 1, PageID.3) Upon his arrival, he wrote a grievance against Defendants Sergeant Lesie, Deputy Warden Riccimstrict, Assistant Resident Unit Manager Martin, Nurse Solmonson, Sergeant Mohr and several John Does. (*Id.*) He complained that they engaged in threatening, discriminatory, retaliatory, and harassing behavior. (*Id.*) Plaintiff claims that the filing of the grievance motivated each of the named Defendants to violate his constitutional rights in various ways.

According to Plaintiff's allegations, on December 11, 2017, Defendant Mohr issued a fabricated misconduct ticket in retaliation for the filing of a grievance. (*Id.* at 8-9.) Plaintiff claims that Defendant Warden Campbell found him guilty of the misconduct without first providing Plaintiff notice of the meeting or an opportunity to attend. (*Id.* at 9.)

Plaintiff also claims that certain Defendants denied him his right to practice his religion and subjected him to cruel and unusual punishment. Plaintiff identifies himself as a practicing member of the Moorish Science Temple of America. Sometime after his arrival at Gus Harrison, Plaintiff was allegedly moved to an observation cell because he was fasting in observance of his religion. (*Id.* at 7.) He continued to take medication for a seizure disorder during his fast, but declined to take his other medications. (*Id.*)

According to Plaintiff, a nurse attempted to examine him during his fast, but he refused. (*Id.*) Plaintiff states that, because he refused to be examined, his cell was then "rush[ed]" on three separate occasions, December 20 and 26, 2017, and January 3, 2018. (*Id.*) "Rushing" involved him being thrown on the floor with a shield and handcuffed. (*Id.*) He claims that a blood sample was taken from his arm without his consent. (*Id.*) It is unclear from the face of the complaint whether Plaintiff alleges that blood was drawn all three times his cell was rushed or on just one occasion. Plaintiff identifies the following Defendants as the individuals who rushed his cell: Defendants Solmonson, Clark, Roback, Rodugues, Lesie, Riccimstrict, Martin, Campbell (Health Unit Manager), Fleenor, Scate, and John Doe. (*Id.*) He claims that their actions caused him physical harm and denied him his religious freedom. (*Id.*)

On January 5, 2018, Plaintiff asked Defendants Riccimstrict and Martin why he was not allowed to attend religious services. (*Id.* at 8.) They told him that he would not be permitted to attend religious services until he stopped "making noise" with their boss. (*Id.*)

On another occasion, a John Doe came to Plaintiff's cell and confiscated all of his property including legal materials. He claims that this caused him to miss a deadline in a court case, leading to the dismissal of his case. (*Id.*) Plaintiff allegedly asked Defendant Zimmenment, Johnson Harrison, Defendant Lesie, Defendant Scate, and Defendant Martin whether he could regain possession of his legal materials and claims that they responded, "No." (*Id.*) Plaintiff further states that Defendant Lewis destroyed his legal documents and Defendants Martin and Lundy refused to return his property to him. (*Id.*)

3

Defendants Tanner, Gallatin, and Clark allegedly threatened Plaintiff by telling him he was "headed for trouble" and failing to ensure that his property was transferred when he was sent to a different prison. (*Id.*)

Plaintiff alleges that Defendant Starr told him to "sign off" on various grievances and warned that if he did not he would "not make it." *Id.*

Plaintiff claims that Defendants Riccimstrict, Martin, and Solmonson told him that if he "don't stop" they would have him removed from the mental health treatment program. (*Id.*) He does not specifically identify the behavior they wished him to stop, but based upon the totality of the complaint and construing the *pro se* complaint liberally, the court concludes that Plaintiff intends to allege the objected-to behavior was the filing of grievance(s). Plaintiff claims that ultimately (on an unspecified date) he was removed from the program and transferred to a higher security level facility. (*Id.*)

## II. STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957) and Fed. R. Civ. P. 8(a)(2)). While this notice pleading standard does not require "detailed" factual allegations, *Twombly*, 550 U.S. at 555, it does require more than the bare assertion of legal conclusions or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff has been granted leave to proceed without prepayment of the filing fee for this action. Under the Prison Litigation Reform Act ("PLRA"), the court is required to *sua sponte* dismiss an *in forma pauperis* complaint before service on a defendant if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B).

To state a federal civil rights claim, a plaintiff must allege that: (1) he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978). A *pro se* civil rights complaint is to be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### III.  DISCUSSION

#### A.  Official Capacity Claims

Plaintiff sues all Defendants in their personal and official capacities. A suit against an MDOC employee in his or her official capacity is equivalent to a suit brought against the MDOC. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars civil rights actions against a state and its agencies and departments unless the state has waived its immunity and consented to suit or Congress has abrogated that immunity. *Id.* at 66. "The state of Michigan . . . has not consented to being sued in civil rights actions in the federal courts," *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004) (citing *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986)), and Congress did not abrogate state sovereign immunity when it passed § 1983. *Chaz Construction, LLC v. Codell*, 137 F. App'x 735, 743 (6th

5

Cir. 2005). Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief against a state and its agencies." *McCormick v. Miami University*, 693 F.3d 654, 661 (6th Cir. 2012) (quotation omitted).

Plaintiff's claims against Defendants in their official capacities will be dismissed.

## B.  Eighth Amendment Claims

Plaintiff argues that his rights under the Eighth Amendment were violated by the Defendants who rushed his cell and took a blood sample, and by Defendants Riccimstrict, Martin, and Solmonson when they arranged for his transfer to a different facility that did not provide mental health treatment programs.

"[T]he Eighth Amendment prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation omitted) (internal quotation marks omitted). To succeed on an Eighth Amendment claim, a prisoner must establish two elements, one objective and one subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the objective component requires a prisoner to show that the conduct was "sufficiently serious." *Rafferty v. Trumbull County, Ohio,* 915 F.3d 1087, 1094 (6th Cir. 2019) (quotation omitted). The objective component "is a 'contextual' inquiry that is 'responsive to contemporary standards of decency.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)). The subjective component requires the plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that

6

he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001).

Plaintiff claims that the Defendants who rushed his room caused him "physical harm" when they threw him on the floor and "forcefully stuck a needle" in his arm. (ECF No. 1, PageID.7.) He does not allege any specific injury he suffered other than the needle stick. The forcible taking of a prisoner's blood without consent does not violate the Eighth Amendment's prohibition on cruel and unusual punishment. *See McDougald v. Stone*, No. 18-3294, 2019 WL 1502513, *3-*4 (6th Cir. Jan. 8, 2019) (finding no Eighth Amendment violation from forced blood draw where there was no evidence of serious injury or pain beyond that typically associated with a blood draw); *see also Hamilton v. Brown*, 630 F.3d 889, 897 (9th Cir. 2011) (holding that claim that use of physical force to extract blood sample violates the Eighth Amendment fails as a matter of law where plaintiff failed to allege more than that he was handcuffed and restrained to effect the blood test, and did not allege pain beyond what would be expected from the needle stick); *Nicholas v. Goord*, 430 F.3d 652, 676 (2d Cir. 2005) (noting that the drawing of blood is "quite a minor intrusion, of the sort that ordinary citizens voluntarily submit to routinely for medical purposes"). Being stuck with a needle for a blood draw can be painful, but is not the type of unnecessary and wanton infliction of pain that constitutes cruel and unusual punishment. Also, Plaintiff's vague claim that he suffered physical harm is insufficient to state a claim. The court will dismiss the portion of Plaintiff's Eighth Amendment claim concerning the blood draw.

Plaintiff also claims that Defendants Riccimstrict, Martin, and Solmonson were deliberately indifferent to his medical needs when they arranged for his transfer to a

7

different facility because the new facility did not provide mental health treatment. An inmate's mental illness may constitute a serious medical need and deliberate indifferent to this need may state an Eighth Amendment claim. *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). This claim survives the court's initial screening process, and is not subject to dismissal at this time.

### C. First Amendment Right to Practice Religion

The First Amendment provides that "Congress shall make no law ... prohibiting the free exercise [of religion]." U.S. Const. amend. I. This prohibition applies to the states through the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). "Inmates clearly retain protections afforded by the First Amendment." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). To show that his First Amendment right to freely exercise his religion was violated, Plaintiff must show: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987). Plaintiff alleges that multiple Defendants unlawfully interfered with his constitutional right to practice his religion.

First, Plaintiff alleges that the Defendants who rushed his cell on several occasions interfered with his ability to practice his religion. He claims that he was "forcefully stuck with a needle" while he was fasting, but does not allege the blood draw was the result of his fast or how it burdened his religious freedom. (ECF No. 1, PageID.7.) This allegation is too speculative and vague to state a claim.

8

Second, Plaintiff alleges that Defendants Riccimstrict and Martin prevented him from attending religious services because he was "making noise" with their boss. (*Id.*) This states a potential claim for relief under § 1983 and survives the court's initial screening.

### D. Misconduct Ticket

Next, Plaintiff claims that he was not afforded the opportunity to participate in a prison disciplinary hearing. He alleges this violated his rights under the Due Process Clause. He also claims that the misconduct ticket was issued in retaliation for his filing a grievance.

A prisoner's right to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that must be followed before depriving a prisoner of good-time credits on account of alleged misbehavior. This decision did not create a right to due process that attaches to all prison disciplinary proceedings. The right to due process arises only when the prisoner faces a loss of liberty. Plaintiff does not allege the loss of good-time credits. Instead, he states that he was sanctioned with the loss of 150 days disciplinary credits. The Sixth Circuit has held that the loss of disciplinary credits does not implicate a liberty interest because it is but one of many factors considered by the parole board in deciding whether to grant early release. *Nali v Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

Even absent a due process interest in disciplinary credits, a prisoner may raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff fails to

9

identify a significant deprivation arising from his conviction, and his claim will be dismissed.

Plaintiff's claim that Defendant Mohr fabricated a misconduct ticket in retaliation for Plaintiff exercising his First Amendment right to file grievances against prison officials survives the court's initial screening.

### E.  Deprivation of Property Claim

Plaintiff next claims that his rights under the Fifth and Fourteenth Amendments were violated by the destruction of his property.  He claims that after an unidentified corrections officer confiscated all of his property, including legal materials, Defendant Lewis destroyed his legal materials.  Defendants Martin and Lundy refused to return Plaintiff's property to him.  He also claims that Defendants Zimmenment, Johnson, Lesie, Scate, and Martin told him that he could not retrieve his legal documents.  Finally, Plaintiff states that the destruction of his legal materials caused him to miss a state-court filing deadline resulting in the dismissal of his case.

"The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."  *Scott v. Clay Cty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000).  Because Plaintiff raises his due process claim against state actors, the claim is properly filed under the Fourteenth Amendment, rather than the Fifth Amendment.  *Id.*  The court will dismiss Plaintiff's Fifth Amendment claim.

Plaintiff's Fourteenth Amendment due process claim also does not entitle him to relief.  The negligent or intentional deprivation of a prisoner's property does not violate due process if adequate state remedies are available to redress the wrong.  *Hudson v.*

10

*Palmer*, 468 U.S. 517, 533-36 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981) (ruling that negligence does not amount to a "deprivation" implicating due process) (overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). To maintain a §1983 action "claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). Plaintiff has not alleged or shown that Michigan's judicial remedies are inadequate or that it would be futile to present his claim in the Michigan state courts. He has an adequate remedy in the state courts. *See Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995). Thus, Plaintiff fails to state a claim upon which relief may be granted.

Plaintiff states a First Amendment right of access to the courts claim against Defendant Lewis for destroying his legal materials. The court finds that this claim survives the initial screening.

### F. Defendant Warden Campbell

The court has held that Plaintiff fails to state a claim based upon allegations that the prison misconduct hearing violated his rights under the Due Process Clause. That is the only specific claim raised against Defendant Campbell, warden of Gus Harrison. To the extent that Plaintiff also names Defendant Campbell as a defendant based upon his supervisory authority, the claim is meritless. The doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel, *see Monell v. Department of Social Services of New York*, 436 U.S. 658, 691-95 (1978), unless it is shown that "the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Hays v. Jefferson County, Ky.,* 668 F.2d

11

869, 874 (6th Cir. 1982). Even if Defendant Campbell was aware of the alleged unconstitutional conduct, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). Plaintiff has not alleged that Defendant Campbell authorized, approved, or knowingly acquiesced in unconstitutional conduct and, therefore, fails to state a claim.

### G. Defendants Tanner, Gallatin, Clark, and Karte

Basic pleading requirements dictate that a plaintiff must attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim); Fed. R. Civ. P. 8(a). A complaint must allege each defendant's personal involvement with the alleged violation of federal rights. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing claims where complaint did not allege which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 200 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant). Moreover, conclusory allegations are insufficient to state a civil rights claim under § 1983. *See, e.g ., Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir.2003).

Plaintiff makes no specific clams against Defendant Karte. His claims against Defendants Tanner, Gallatin, and Clark are limited to a single sentence alleging that they threatened him by telling him he was "headed for trouble" and failing to ensure that his property was transferred when he was sent to a different prison. (ECF No. 1, PageID.8.) Plaintiff fails to allege Defendants Tanner, Gallatin, Clark, and Karte's

involvement in this case with sufficient particularity to provide them with fair notice of the basis of the claims against them. They will be dismissed.

### IV. CONCLUSION

IT IS ORDERED that Plaintiff's claims against Defendants in their official capacities are DISMISSED.

IT IS FURTHER ORDERED that Plaintiff's claims against Defendants Campbell (warden), Tanner, Gallatin, Clark, and Karte are DISMISSED.

Finally, IT IS ORDERED that Plaintiff's claims that his property was taken in violation of the Fifth Amendment, his claims that his First and Eighth Amendment rights were violated when certain Defendants entered his cell and took a blood sample, and his claims that deficiencies in the misconduct hearing violated his rights under the Due Process Clause are DISMISSED. Defendants Fleenor, Scate, Lesie, Roback, Rodugues, Johnson, Lundy, Zimmenment, and HUM Campbell are dismissed from this action.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: October 2, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 2, 2020, by electronic and/or ordinary mail.

    S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-10868.MEEKS.PartialDismissal.MBC.RMK.docx