UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY MEEKS,

      Plaintiff,

v.

DONALD RICCIMSTRICT, VICKIE LEWIS,
DAVE MARTIN, and JOHN DOE(S),

      Defendants.

_____/

Case No. 3:19-cv-10868
District Judge Robert H. Cleland
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION
## TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## (ECF No. 65)
## AND
## TO SUA SPONTE DISMISS JOHN DOE DEFENDANTS[1]

I.      Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff

Anthony Meeks (Meeks) filed a *pro se* complaint naming over 20 Michigan

Department of Corrections (MDOC) employees as defendants. *See* ECF No. 1. At

this point, the only remaining defendants are Donald Ricumstrict (Ricumstrict),

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate
for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR
7.1(f)(2).

1

Vicki Lewis (Lewis), Dave Martin (Martin), and various John Doe defendants.[2]

Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned.

(ECF No. 29).

Before the Court is Ricumstrict, Lewis, and Martin's motion for summary

judgment, (ECF No. 65), which is fully briefed, (ECF Nos. 74, 75).  For the

reasons that follow, the undersigned RECOMMENDS that the motion be

GRANTED.

Additionally, as will be explained, the undersigned will address Meeks'

response, (ECF No. 79), to the December 1, 2022 order to show cause regarding

the John Doe defendants, (ECF No. 78), as well as Ricumstrict, Lewis, and

Martin's response to Meeks' filing, (ECF No. 81).  For the reasons that follow, the

undersigned RECOMMENDS that all defendants referred to as John Doe in the

complaint be SUA SPONTE DISMISSED.

## II.    Background

### A.    The Complaint[3]

During the screening stage of this case, the District Court entered an

---

[2] The Court spells defendants' names as they are spelled in their motion for summary judgment.  *See* ECF No. 65.

[3] Meeks "signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).  As such, it "carries the same weight as would an affidavit for the purposes of summary judgment." *Id*.

2

amended opinion and order of partial dismissal,[4] dismissing multiple defendants

along with Meeks' Fifth Amendment claim and portions of his First, Eighth, and

Fourteenth Amendment claims.  *See* ECF No. 16.  In the amended opinion and

order, the District Court summarized the facts alleged in the complaint as follows:

> [Meeks'] claims arise from his incarceration at the Gus Harrison
> Correctional Facility (Gus Harrison) in Adrian, Michigan.  [Meeks]
> states that, on some unspecified date, he was transferred to Gus
> Harrison so that he could participate in a mental health treatment
> program.  Upon his arrival, he wrote a grievance against Defendants
> Sergeant Lesie, Deputy Warden [Ricumstrict], Assistant Resident Unit
> Manager Martin, Nurse Solmonson, Sergeant Mohr and several John
> Does.  He complained that they engaged in threatening, discriminatory,
> retaliatory, and harassing behavior.  [Meeks] claims that the filing of
> the grievance motivated each of the named Defendants to violate his
> constitutional rights in various ways.
>
> According to [Meeks'] allegations, on December 11, 2017, Defendant
> Mohr issued a fabricated misconduct ticket in retaliation for the filing
> of a grievance.  [Meeks] claims that Defendant Warden Campbell found
> him guilty of the misconduct without first providing [Meeks] notice of
> the meeting or an opportunity to attend.
>
> [Meeks] also claims that certain Defendants denied him his right to
> practice his religion and subjected him to cruel and unusual
> punishment.  [Meeks] identifies himself as a practicing member of the
> Moorish Science Temple of America.  Sometime after his arrival at Gus
> Harrison, [Meeks] was allegedly moved to an observation cell because
> he was fasting in observance of his religion.  He continued to take
> medication for a seizure disorder during his fast, but declined to take
> his other medications.  According to [Meeks], a nurse attempted to

---

[4] The District Court entered an opinion and order of partial dismissal on October 1,
2020, (ECF No. 15), and then one day later entered an amended opinion and order
of partial dismissal, (ECF No. 16), to correct "the inadvertent omission of
defendant Starr from the list of defendants against whom Plaintiff's remaining
claims may proceed."

examine him during his fast, but he refused. [Meeks] states that, because he refused to be examined, his cell was then "rush[ed]" on three separate occasions, December 20 and 26, 2017, and January 3, 2018. "Rushing" involved him being thrown on the floor with a shield and handcuffed. He claims that a blood sample was taken from his arm without his consent. It is unclear from the face of the complaint whether [Meeks] alleges that blood was drawn all three times his cell was rushed or on just one occasion. [Meeks] identifies the following Defendants as the individuals who rushed his cell: Defendants Solmonson, Clark, Roback, Rodugues, Lesie, [Ricumstrict], Martin, Campbell (Health Unit Manager), Fleenor, Scate, and John Doe. He claims that their actions caused him physical harm and denied him his religious freedom.

On January 5, 2018, [Meeks] asked Defendants [Ricumstrict] and Martin why he was not allowed to attend religious services. They told him that he would not be permitted to attend religious services until he stopped "making noise" with their boss.

On another occasion, a John Doe came to [Meeks'] cell and confiscated all of his property including legal materials. He claims that this caused him to miss a deadline in a court case, leading to the dismissal of his case. [Meeks] allegedly asked Defendant Zimmenment, Johnson Harrison, Defendant Lesie, Defendant Scate, and Defendant Martin whether he could regain possession of his legal materials and claims that they responded, "No." [Meeks] further states that Defendant Lewis destroyed his legal documents and Defendants Martin and Lundy refused to return his property to him.

Defendants Tanner, Gallatin, and Clark allegedly threatened [Meeks] by telling him he was "headed for trouble" and failing to ensure that his property was transferred when he was sent to a different prison.

[Meeks] alleges that Defendant Starr told him to "sign off" on various grievances and warned that if he did not he would "not make it."

[Meeks] claims that Defendants [Ricumstrict], Martin, and Solmonson told him that if he "don't stop" they would have him removed from the mental health treatment program. He does not specifically identify the behavior they wished him to stop, but based upon the totality of the

4

complaint and construing the *pro se* complaint liberally, the court concludes that [Meeks] intends to allege the objected-to behavior was the filing of grievance(s). [Meeks] claims that ultimately (on an unspecified date) he was removed from the program and transferred to a higher security level facility.

(*Id.*, PageID.80-82) (internal record citations omitted).

<h2 style="text-align:center">B.    Submitted Evidence</h2>

<h3 style="text-align:center">1.    Access to the Court Claim</h3>

Meeks filed a grievance claiming that on July 10, 2017, his property was searched outside of his presence in violation of MDOC policy, and that during the search some of his property including a court transcript and legal envelopes were damaged and/or thrown away. (ECF No. 38-3, PageID.256). During the investigation into Meeks' grievance, Lewis admitted to searching Meeks' property without him being present. (*Id.*, PageID.257). However, at the time of the search, Meeks "was on Orientation status," so the MDOC grievance reviewer concluded that Meeks being present during the search "was not possible." (*Id.*).

Lewis further "admit[ted] to removing metal pieces out of legal folders but did NOT destroy any binders/folders as prisoner Meeks claim[ed]." (*Id.*) (capitalization in original). The grievance reviewer examined Meeks' binders/folders and noted that "they all appeared to be old, ripped and used for a long time." (*Id.*).

5

2.      Free Exercise Claim

a.      Prison Records

On December 11, 2017, Meeks was issued a Class I misconduct ticket for smuggling and substance abuse (other substance).  (ECF No. 45, PageID.390-392).  Records reflect that Meeks was angry about this ticket so he "began a 'hunger strike[,]' " which lasted 10 days.  (ECF No. 38-3, PageID.229).  During his hunger strike, Meeks "was non-compliant with meals, medications and assessments." (*Id*.).

On December 19, 2017, during Meeks' hunger strike, the misconduct ticket was brought before a hearing officer.  *See* ECF No. 45, PageID.392.  The hearing officer dismissed the substance abuse (other substance) charge but found Meeks guilty on the smuggling charge.[5]  (*Id*., PageID.392-393).

On the same day as the hearing, an MDOC qualified mental health professional (QMHP), Christopher C. Zimmerman, MA, LLP (Zimmerman), created a Mental Health Management Plan for Meeks.  (ECF No. 65, PageID.620-621).  Zimmerman wrote that "Meeks require[d] placement in an Observation Cell

---

[5] Meeks requested a rehearing on the smuggling charge, but his request was denied because the reviewer determined that "there [was] sufficient competent, material and substantial evidence on the record to support the Hearing Officer's findings that prisoner Meeks did knowingly and intentionally smuggles [sic] coffee into the [Residential Treatment Program] unit where coffee is not allowed."  (ECF No. 45, PageID.388).

for monitoring sustained behavioral control due to being on hunger strike and for refusal of all medications."[6]  (*Id*., PageID.620).  Zimmerman determined that Meeks was "at INTERMEDIATE RISK of suicide or self-injury."  (*Id*.) (capitalization in original).

A little over a week later, on December 28, 2017, Zimmerman created a new Mental Health Management Plan for Meeks.  (*Id*., PageID.626-627).  Zimmerman wrote that "Meeks require[d] placement on IN UNIT management plan for increased symptoms and [was] at INTERMEDIATE RISK for suicide or self-injury."  (*Id*., PageID.626) (capitalization in original).

On January 2, 2018, Meeks certified that he was voluntarily refusing food.  (*Id*., PageID.629).  The form certification indicated that Meeks was "[r]efus[ing] to state reason for not eating, unknown if inmate [was] drinking fluids in cell."  (*Id*.).

A few days later, on January 5, 2018, Meeks presented for an unscheduled nurse visit to obtain a hunger strike evaluation.  (ECF No. 45-1, PageID.426).

---

[6] The MDOC maintains a policy directive (PD) outlining what actions must be taken if "[a] prisoner in a correctional facility . . . appears to be engaging in a hunger strike."  (PD 04.06.120 (4/12/99), ECF No. 65, PageID.623-624).  Any such prisoner is supposed to "be immediately identified, evaluated, and managed as set forth in [PD 04.06.120]."  (*Id*., PageID.623).  The evaluation process includes a mental health evaluation that must be completed by a QMHP.  (*Id*.).  A QMHP is "[a] physician, psychiatrist, psychologist, social worker, registered nurse, or other health professional who is trained and experienced in the areas of mental illness and is licensed by the State of Michigan or, if licensure is not required, certified to practice within the scope of his/her training."  (*Id*.).

7

Meeks was examined and underwent bloodwork.  (*Id.*).  He also discussed scheduling a hygiene session so he could take a proper shower.  (*Id.*).  Notes reflect that Meeks intended to continue his hunger strike until some of his property was returned to him.  (*Id.*, PageID.427).  The next day, health care records reflect that Meeks reported "he ate most of his breakfast[.]"  (*Id.*, PageID.433).

On January 10, 2018, Zimmerman discontinued Meeks' overall "IN-UNIT status."  (*Id.*, PageID.439) (capitalization in original).  Zimmerman determined that Meeks needed to keep receiving his meals and medications in cell to enable "continued monitoring."  (*Id.*).

Approximately one week later, on January 17, 2018, Zimmerman reevaluated Meeks and determined that he was now a "LOW RISK for suicide or self-injury."  (*Id.*, PageID.443) (capitalization in original).  As such, Zimmerman determined that Meeks could start receiving his meals and medications outside of his cell.  (*Id.*).

On January 24, 2018, Zimmerman removed Meeks from the "AA callout" at Meeks' request so he could "attend his primary church service that meets at the same time."  (*Id.*, PageID.445).

b.     Affidavit of Donald Ricumstrict

During the relevant period, Ricumstrict was the deputy warden at Gus Harrison.  (Ricumstrict Affidavit, ECF No. 65, PageID.631-632).  Ricumstrict

explained that on January 5, 2018—the day on which Meeks says he was denied access to a religious service—Meeks was on suicide watch and "restricted to in-unit activities[.]"  (*Id.*, PageID.632).  The decision to place Meeks on suicide watch and restrict his activities was made by employees of Health Care Services and was the result of Meeks being "non-compliant with all his medications and on hunger strike."  (*Id.*, PageID.632).  Ricumstrict was not a Health Care Services employee and had "no control over their decisions or orders."  (*Id.*).

Meeks was not permitted to attend the January 5, 2018 religious service because it was conducted in a building other than his housing unit.  (*Id.*, PageID.632-633).  Ricumstrict said it was "not true" that he denied Meeks access to the religious service "because [Meeks] was making noise with [his and Martin's boss]."  (*Id.*, PageID.632).  The reason "Meeks could not attend the religious service [was] because of the order from Health Care Services."  (*Id.*, PageID.633).

### III.   Defendants' Motion for Summary Judgment

#### A.   Standards

##### 1.   Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Meeks is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable."  *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d

10

784, 788 (6th Cir. 2005)) (cleaned up).

### 2.    Failure to State a Claim

In addition to their summary judgment arguments, Ricumstrict, Martin, and

Lewis also argue that Meeks' complaint fails to state any claims against them upon

which relief can be granted.  They do not move for dismissal under Federal Rule of

Civil Procedure 12(b), but instead suggest that the complaint be dismissed under

the Prison Litigation Reform Act (PLRA), which states

> [t]he court shall on its own motion or on the motion of a party dismiss
> any action brought with respect to prison conditions under section 1983
> of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility if the court is satisfied that the
> action is frivolous, malicious, *fails to state a claim upon which relief
> can be granted*, or seeks monetary relief from a defendant who is
> immune from such relief.

42 U.S.C. § 1997e(c) (emphasis added).

Moreover, in a case such as this one where the plaintiff is proceeding *in

forma pauperis*, "the court shall dismiss the case at any time if the court determines

that the action or appeal-- (i) is frivolous or malicious; (ii) *fails to state a claim on

which relief may be granted*; or (iii) seeks monetary relief against a defendant who

is immune from such relief."  28 U.S.C. § 1915(e)(2) (cleaned up) (emphasis

added).

When determining whether a complaint states a claim on which relief may

be granted, the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

12

(6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

### B.     Free Exercise Claim

Meeks asserts a free exercise claim under the First Amendment against both Ricumstrict and Martin.  He says that Ricumstrict and Martin prevented him from attending a religious service on January 5, 2018.

### 1.     Standard

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ."  U.S. CONST. amend. I.  "The First Amendment is applicable to the States through the Fourteenth Amendment."  *Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Cantwell v. Conn.*, 310 U.S. 296, 303 (1940)).

While the Supreme Court has long said that "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion," it has coincidentally said that inmates' First Amendment rights are limited both by "the fact of incarceration" and "valid penological objectives."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)

13

(cleaned up); *see also Turner v. Safley*, 482 U.S. 78, 92 (1987) (noting that "maintaining safety and internal security" are "the core functions of prison administration"). "Restrictions on prisoners' First Amendment rights are presumed reasonable because they are necessary to protect prisoners and correctional facility personnel." *Garrison v. Balderrama*, No. 21-1147, 2022 WL 17824429, at *2 (W.D. Tenn. Dec. 20, 2022) (punctuation modified); *see also Turner*, 482 U.S. at 89 ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

Moreover, before a court can reach the issue of whether a prison restriction or regulation is valid, it must first determine whether the "prison inmate shows a sincere belief that his or her religion requires the practice at issue." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010). To do so, the "prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.' " *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)).

### 2. Application

In this case, Meeks claims that Ricumstrict and Martin did not permit him to attend a January 5, 2018 religious service in retaliation for filing grievances.

14

Ricumstrict and Martin argue that even if this was true, denying a prisoner the opportunity to attend a single religious service does not constitute a First Amendment violation, particularly when the denial was a related to a valid penological purpose.

Ricumstrict and Martin's argument is supported by several cases. *See, e.g.*, *Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010) (finding that inadvertently giving a prisoner-plaintiff non-kosher meal on an isolated occasion was insufficient to demonstrate that official "acted unreasonably"); *Beebe v. Birkett*, 749 F. Supp. 2d 580, 597 (E.D. Mich. 2010) (finding that "accidentally cancel[ing]" one weekly religious service based on prison employees' "confusion and miscommunication" was "insufficient to sustain a constitutional violation"); *Fitch v. City of Leitchfield*, No. 4:08CV-P76-M, 2011 WL 4862255, at *5 (W.D. Ky. Oct. 11, 2011) (finding that a prisoner-plaintiff missing kufi did not place a "substantial burden on his ability to practice his religion"); *Gunn v. Ky. Dep't of Corr.*, No. 5:07CV-P103-R, 2010 WL 2555756, at *5 (W.D. Ky. June 18, 2010) (finding that preventing a prisoner-plaintiff from attending chapel service on one occasion was "not sufficient to implicate the Constitution" where prison policy prevented the prisoner-plaintiff from reentering the service after security had already escorted him out). Importantly, however, the Sixth Circuit has cautioned against "overlook[ing] the significance of a religious event," explaining that

15

missing a religious event like Passover or Eid "is plainly incomparable to the harm of missing one weekly religious service or being denied a kosher meal on an isolated occasion." *Maye v. Klee*, 915 F.3d 1076, 1084 (6th Cir. 2019) (citing *Whitney v. Brown*, 882 F.2d 1068, 1074 (6th Cir. 1989)).

Here, Meeks does not assert that the January 5, 2018 religious service was particularly significant, nor does he explain how restricting a prisoner on in-unit status because of a hunger strike from attending a single religious service was unreasonable. Ensuring the safety of prisoners, even from themselves, is a valid penological objective. Further, the record reflects that once Meeks ended his hunger strike, he was removed from in-unit status and could then begin attending religious services. Reasonable jurors could not conclude otherwise. Accordingly, the undersigned finds that Meeks' inability to attend one routine religious service while on in-unit status for a hunger strike does not constitute a violation of the First Amendment as a matter of law.

Ricumstrict and Martin also argue that they cannot be held liable for Meeks' inability to attend the January 5, 2018 religious service because they were not personally involved in restricting Meeks' ability to leave his unit.

To state a viable claim under § 1983 against Ricumstrict and Martin, Meeks needed to allege that through their "own individual actions" each of them "*personally violated* [his] rights under clearly established law." *Johnson v.*

16

*Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original). Meeks has

alleged no facts indicating that Ricumstrict or Martin had anything to do with

Zimmerman's decision to restrict him to in-unit activities while he was on a hunger

strike.

Furthermore, to the extent that Meeks argues that Ricumstrict (at the time an

assistant deputy warden) and Martin (at the time an assistant resident unit

manager) should be held liable under a theory of *respondeat superior*, or

supervisory liability, this argument should also fail. "It is well-settled that

'[g]overnment officials may not be held liable for the unconstitutional conduct of

their subordinates under the theory of *respondeat superior*.'" *Peatross v. City of

Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 676). The

Sixth Circuit "ha[s] long held that supervisory liability requires some 'active

unconstitutional behavior' on the part of the supervisor." *Peatross*, 818 F.3d at

241 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

The requirement of active unconstitutional behavior is met when a person "

'directly participated' in the alleged misconduct, at least by encouraging, implicitly

authorizing, approving or knowingly acquiescing in the misconduct, if not carrying

it out himself." *Flagg v. Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). At the very

least, a supervising official must have "had knowledge of the offending

employee's conduct at a time when the conduct could be prevented, or that such

conduct was otherwise foreseeable or predictable." *Nouri v. Cnty. of Oakland*, No. 2:10–cv–13700, 2013 WL 474522, at *6 (E.D. Mich. Feb. 4, 2013).

Meeks has not submitted any evidence showing that Ricumstrict or Martin directly participated in Zimmerman's evaluations of him or in any way influenced Zimmerman's decision to place him on in-unit status. Instead, Meeks alleges that when he asked Ricumstrict and Martin to explain why he was not allowed to attend religious services that they told him he would not be permitted to attend religious services until he stopped "making noise" with their boss. Even if this allegation is true, Meeks has not explained, much less provided evidence to support, either Ricumstrict's or Martin's active participation in Meeks' placement on in-unit status during his hunger strike.

### 3.    In Sum

The undersigned recommends that the Court grant Ricumstrict and Martin's motion for summary judgment on Meeks' free exercise claim. As a matter of law, Meeks has failed to establish a violation of his right to free exercise under the First Amendment. This is because missing one routine religious service does not rise to the level of a constitutional violation. Additionally, Meeks was refusing to eat and take his prescribed medications during the relevant period and Zimmerman, a QMHP, had assessed Meeks at being at an intermediate risk of self-harm or suicide. Accordingly, Meeks' safety was at issue and ensuring the safety of

prisoners is a valid penological objective.  Finally, Meeks has also failed to show

that either Ricumstrict or Martin were personally involved in the decision to put

him on in-unit status or that they influenced Zimmerman's decision to do so.

Thus, Meeks' free exercise claim should be dismissed.

C.     Access to the Courts Claim

Meeks asserts an access to the courts claim against Lewis, alleging that she

searched his property outside of his presence and in doing so damaged and/or

destroyed items including a court transcript and legal envelopes.  Lewis argues that

Meeks has not made out the elements sufficient to survive summary judgment.

1.     Standard

"Inmates have a constitutionally protected right of access to the courts."

*Thomas v. Rochell*, 47 F. App'x 315, 317 (6th Cir. 2002).  "To establish a violation

of the right of access to the courts, a prisoner must show that prison officials

inflicted an 'actual injury.' "  *Kirschke v. MacLaren*, No. 18-1606, 2018 WL

6177162, at *2 (6th Cir. Nov. 8, 2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 351-

352 (1996)).  "An actual injury occurs when prison officials hinder efforts to

pursue non-frivolous legal claims by 'actively interfering with inmates' attempts to

prepare legal documents . . . or file them.' "  *Kirschke*, at *2 (quoting *Lewis*, 518

U.S. at 350).  "Examples of actual prejudice to pending or contemplated litigation

include having a case dismissed, being unable to file a complaint, and missing a

19

court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

### 2.    Application

Here, Meeks has not alleged an actual injury.  Even if Lewis did damage or destroy some of Meeks' legal materials during a property search, this is not enough to establish an access to the courts claim.

Meeks appears to be alleging that his "actual injury" is the destruction of his legal property for which he argues he is entitled to compensation (money damages) rather than prejudice to a direct criminal appeal, a habeas petition, or a civil rights case seeking to vindicate his basic constitutional rights.  *See Lewis*, 518 U.S. at 348-354.  While the destruction of property can be said to be an injury in some legal contexts, it is not an injury under a § 1983 access to the courts claim.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation").  Thus, Meeks has failed to establish an access to the courts claim against Lewis, and her motion for summary judgment should be granted.

### D.    Qualified Immunity

In addition to the arguments discussed above, Ricumstrict, Martin, and Lewis argue that they are entitled to qualified immunity both because Meeks has failed to allege facts giving rise to a constitutional violation and because they did

20

not violate any of Meeks' clearly established rights.

1.    Standard

Qualified immunity shields government officials performing discretionary

functions "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Created to

protect government officials from interference with their official duties, qualified

immunity "is an immunity from suit rather than a mere defense to liability."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   It gives officials "breathing room

to make reasonable but mistaken judgments and protects all but the plainly

incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3,

6 (2013) (punctuation modified).  After a defending official initially raises

qualified immunity, the plaintiff bears the burden of showing that the official is not

entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir.

2013).

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the

facts in the light most favorable to the plaintiff, [it] determine[s] whether the

allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the

right was clearly established at the time of the incident." *Id*.  The steps may be

considered in either order, so "[i]f the court concludes that no constitutional

violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

2.   Application

Here, Meeks is unable to satisfy the first qualified immunity step, namely that his allegations give rise to a constitutional violation.  As discussed above, Meeks has failed to establish either a free exercise claim against Ricumstrict and Martin or an access to the courts claim against Lewis.  Given Meeks' inability to satisfy the first step, the Court need not address the second.  *Kinlin*, 749 F.3d at 577.  Thus, Ricumstrict, Martin, and Lewis are all entitled to qualified immunity because Meeks failed to allege facts giving rise to a constitutional violation.

IV.   John Doe Defendants

A.   Background

The complaint appears to allege constitutional violations against a number of defendants referred to with the moniker of "John Doe."  *See* ECF No. 1.  Even though Meeks initiated this case almost four years ago, he never provided the Court with any names or addresses for the John Doe defendants.

In light of this, the undersigned entered an order to show cause on this issue, (ECF No. 78), to which Meeks responded, (ECF No. 79).  After revieing Meeks' response, the undersigned ordered Ricumstrict, Martin, and Lewis to respond, (ECF No. 80), and they did so, (ECF No. 81).  The undersigned's order and both

22

responses will be discussed in turn below.

1.     Show Cause Order

On December 1, 2022, the Court entered an Order Denying Plaintiff's
Motion for Extension of Time to File a Sur-reply and Order to Show Cause as to
John Doe Defendant(s).  (ECF No. 78).  In relevant part, the order required Meeks
to "provide the Court in writing with the **full name(s) and address(es)** for the
defendant(s) he referred to as John Doe in the complaint **on or before December
29, 2022**."  (*Id*., PageID.715) (emphasis in original).  The order further stated that
"[i]f Meeks provide(d) the Court with the full name(s) and address(es) by this date,
the show cause will be vacated, and the Court will direct service on the properly
identified defendant(s)."  (*Id*.).

2.     Meeks' Response

On December 28, 2022, Meeks filed a response to the order.  (ECF No. 79).
In addition to providing names and addresses for some additional individuals that
he wants to add as defendants in this matter, Meeks raised a number of additional
concerns including issues related to discovery.  *See id*.  The individuals who Meeks
now seeks to add as defendants are as follows:

- Officer Monroe
- Officer Kelley
- Grievance Coordinator Ream
- ADW D. Messer
- RN Korte

23

- RN Miranda R. King-Musso
- RN Christine Clark
- PA Jindal

### 3. Defendants' Response

On January 11, 2023, Ricumstrict, Martin, and Lewis filed a response as directed by the undersigned.  (ECF No. 81).  In their response, they addressed Meeks' various concerns and request that the Court deny Meeks' attempt to add the individuals listed above as defendants in this case.  *See id*.

Ricumstrict, Martin, and Lewis argue that Meeks failed to explain how each of the listed individuals violated his constitutional rights.  (*Id*., PageID.732-733). Instead, he simply stated that the individuals were all "involved in committing the violation of Plaintiff first, fifth, Eighth and Fourteenth Amendment Rights."  (*Id*. (quoting ECF No. 79, PageID.719)).  Importantly, they argue that all of Meeks' claims except for his First Amendment claims have already been dismissed by this Court, (ECF No. 81, PageID.733), and also that Meeks failed to file any grievances against these individuals, (*Id*. (citing ECF No. 49, PageID.475-477)).

They further argue that the applicable three-year statute of limitations has expired for all of his claims.  (*Id*., PageID.733-734).  Additionally, they explain that "[e]ven naming a 'John Doe' in his complaint does not toll the statute of limitations because '[i]n Michigan, substituting a named defendant for a previously unnamed, "John Doe," defendant is considered to be a change in parties, rather than a substitution of parties, for purposes of Fed. R. Civ. P. 15(c).' "  (*Id*.,

24

PageID.734 (quoting *Cross v. Detroit*, No. 06-11825, 2008 WL 2858407, at *1 (E.D. Mich. 2008)).

B.    Discussion

Ricumstrict, Martin, and Lewis' arguments regarding the addition of the John Doe defendants are well-taken.  Meeks did not file a motion for leave to amend the complaint before the expiration of the applicable statute of limitations. He provided the names listed above in December 2022, and all of the allegations in his complaint appear to concern events that took place in or around 2017 and 2018. As such, the statute of limitations expired as to all of his claims well before December 2022.  As such, Meeks should not be permitted to add them as defendants at this time.  *See Cross*, at *1 ("Plaintiff did not seek leave to amend the Complaint to name the John Doe defendant prior to the expiration of the statute of limitations.  Therefore, the statute of limitations ran as to that claim on or about May 2008.  The Court finds Plaintiff's claim is barred by the statute of limitations and *sua sponte* dismisses Count V with prejudice."); *see also Eady v. Young*, No. 4:12-CV-28, 2013 WL 11328159, at *4 (E.D. Tenn. Feb. 6, 2013) (explaining that Rule 15(c) allows relation back for the mistaken identification of defendants, not for "John Doe" defendants).

Furthermore, it does not appear that Meeks filed grievances against any of the individuals at issue.  This means that his claims against them are likely

25

unexhausted.  Under the PLRA, prisoners must "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  The MDOC requires prisoners to file grievances as part of the exhaustion process.  *See, e.g.*, *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).  Given that it appears Meeks failed to properly exhaust his administrative remedies against the newly identified individuals, adding them as defendants would almost certainly be futile because they would be entitled to summary judgment on the basis on exhaustion.

Lastly, Meeks has not explained how the listed individuals personally violated his constitutional rights.  To state a viable claim against them under § 1983, Meeks must allege that through their "own individual actions" each of the proposed defendants "*personally violated* [his] rights under clearly established law." *Johnson v. Moseley*, 790 F.3d at 653 (emphasis in original).  Meeks' filing fails to do this.

In sum, the undersigned finds that adding eight new defendants to this case after it has been pending for nearly four years is improper, particularly in light of the expiration of the statute of limitations, the apparent lack of proper exhaustion, and Meeks' failure to allege how the proposed defendants personally violated his rights.  Therefore, it is recommended that the Court sua sponte dismiss any and all John Doe defendants referenced in the complaint.

26

## V.    Conclusion

For the reasons stated above, it is recommended that Ricumstrict, Lewis, and Martin's motion for summary judgment, (ECF No. 65), be GRANTED.  It is further recommended that all John Doe defendants referenced in the complaint be SUA SPONTE DISMISSED, including those named by Meeks in his response, (ECF No. 79), to the Court's order to show cause, (ECF No. 78).

Dated: January 27, 2023                         s/Kimberly G. Altman
Detroit, Michigan                               KIMBERLY G. ALTMAN
                                                United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 27, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
